IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, et al., : | CIVIL ACTION |
| Plaintiffs, : | |
| : | CLASS ACTION |
| MICHAEL KIRBY, et al., : | |
| : | No. 2:74-cv-00258 |
| Plaintiffs-Interveners, : | |
| v. : | |
| JOSEPH RIZZO, et al., : | |
| Defendants. : | |

## MEMORANDUM OPINION

TIMOTHY R. RICE                                                                 September 29, 2014
U.S. MAGISTRATE JUDGE

The City of Philadelphia (the "City") seeks to dissolve a 1975 consent decree to remedy racial discrimination against African Americans in its Fire Department (the "Department"). Since 2011, the consent decree has been suspended by agreement, and the parties agreed the decree will permanently dissolve if the percentage of uniformed African-American firefighters does not fall below 26.73%.

I will dissolve the decree and make the following findings of fact and conclusions of law.[1]

---

[1] Plaintiffs have not contested the findings of fact. Instead, they maintain the decree should remain because the City's testing methods are unconstitutional.

## FINDINGS OF FACT

1. On or about January 31, 1974, the Commonwealth of Pennsylvania, Club Valiants, Inc., Ronald C. Lewis, Charles G. Hendricks, Robert E. Dobson, Stephen Kerrin, and Joseph L. Sawyer (collectively, "Plaintiffs"), filed a class-action lawsuit against the City and various individuals in their official capacity, alleging the Department discriminated against African-Americans in both entry-level hiring and promotional decisions, in violation of Title VII, 42 U.S.C. § 2000 et seq., and the Equal Protection Clause.

2. On January 7, 1975, the Court entered a consent decree, imposing obligations on the Department, including the creation of new entry and promotional exams and mandatory promotion of certain African-American firefighters.

3. The decree was modified by orders entered on October 27, 1977, July 24, 1984, March 19, 1993, August 27, 1997, and June 29, 1999.

4. The 1977 modification terminated the promotional quotas, approved exams for the positions of lieutenant and captain, and relinquished its supervision of, and jurisdiction over, the Department's promotional exams.

5. The 1984 modification imposed a two-part remedial hiring scheme on the Department. First, the Department was ordered to hire, in addition to those qualified African-American firefighter applicants who it would have otherwise hired on a rank-order basis, an additional 151 qualified African-American applicants over the next 1,250 firefighter hires (the "quota"). Second, any position on the eligibility list left open because the original applicant was hired pursuant to the quota was to be filled by "the next highest ranking African-American applicant remaining on the list."

6. The 1993 modification applied the remedial hiring scheme to all uniformed classes.

7. The 1999 modification indefinitely extended the remedial hiring scheme.

8. On May 19, 2010, the City moved to dissolve the consent decree.

9. On or about September 21, 2011, the Commonwealth of Pennsylvania withdrew all claims against the defendants and was dismissed from this action by stipulation.

10. On October 25, 2011, the parties reached a proposed settlement.

11. On October 27, 2011, I entered findings of fact and conclusions of law approving the Settlement Agreement.

12. The Agreement suspended the consent decree for two years from the date of establishment of an eligibility list. During that time, the City developed and administered exams for entry-level uniformed personnel.

13. Specifically, the agreement states:

> 2. Suspension of the consent decree. The parties agree to suspend the consent decree for a period of two (2) years (the "suspension period"), which period will begin to run on the date of establishment of the eligible list for firefighters (exam no. 6B01-20110627-OC-01).
>
> > a. During the suspension period, the City will be free to develop and administer exams for entry-level uniformed personnel and hire from any eligibility lists that result from such exams without being bound by the restrictions of the consent decree, but must otherwise comply with law.
> >
> > b. Within 14 days after the end of the suspension period, the department will produce to the Court the EEO-1 report (the "report") for all uniformed personnel.
> >
> > c. The parties will have 14 business days from the date the report is produced to the Court to conduct an in camera review of the report and the underlying data and to assert any challenges to the data contained in the report. This period may be extended by the Court for cause shown at the request of a party, at the Court's discretion.
> >
> > d. The Court will have final and unreviewable authority to

3

decide any challenges to the data contained in the report. Any such challenge must be supported with clear and convincing evidence, and the party will pay the prevailing party's attorney fees if the Court finds that either the challenge or the defense to the challenge was frivolous or made in bad faith. It is agreed that the Court's decision on any such challenge shall constitute a final judgment, not subject to appeal. Any such challenges shall be limited to one of the following grounds:

> i. that the City made a mathematical error in calculating the percentage of African-Americans in the uniformed personnel classes;
> 
> ii. that the City included individuals who are not on the department's payroll as of the date that the suspension period expires; or
> 
> iii. any other factor, provided that:
> > 1. there is a presumption of correctness for any data that is provided as a result of an individual employee's self-report;
> > 
> > 2. any petition challenging the classification must contain, on its face, substantial evidence that the classification is wrong; and
> > 
> > 3. the Court—in its sole, final, and unreviewable discretion—will determine which, if any, petitions meet this standard and shall automatically dismiss any petitions that do not.

e. The consent decree will permanently dissolve if, after the expiration of the suspension period and final determination by the Court of any challenges described in subparagraph 2(d), the representation of African-Americans in the department's combined uniformed personnel classes does not fall below 26.73% of the total number of employees in the combined uniformed personnel classes.

f. If the representation of African-Americans in the department's uniformed personnel classes does fall below 26.73% of the total number of employees in the uniformed personnel classes, the consent decree shall not permanently dissolve and shall remain in force for purposes and all future hiring thereafter, subject to the right of any party to move for termination or modification of the

4

>decree. Further, all parties shall retain all rights, remedies, claims, and defenses that they have now, or may have in the future, provided, however, that Club Valiants, Inc., shall have no right to seek legal redress or to bring a claim on behalf of any applicant for anything that occurred or did not occur during the suspension period, which relates to the provisions of this Agreement.

14. On November 19, 2011, the City administered exam no. 6B01-20110627-OC-01 for the Firefighter (General) position.

15. An eligibility list was established on April 26, 2012. Pursuant to paragraph 2 of the Settlement Agreement, the consent decree was suspended from that date until April 25, 2014.

16. On May 8, 2014, the City sent to Plaintiffs' counsel an EEO-1 report showing that as of April 25, 2014, the percentage of African-Americans in the Fire Department was 27.61%, almost a full percentage point higher than the 26.73% representation required by the Settlement Agreement.

17. Plaintiffs did not challenge the EEO-1 report, or request the underlying data, as permitted by paragraph 2(c) of the Settlement Agreement. See supra ¶ 13. Nor did Plaintiffs cite any issue with the legality or constitutionality of the November 19, 2011 examination.

18. On August 11, 2014, the City filed a second motion to dissolve the consent decree under Fed. R. Civ. P. 60(b)(5). The City requests dissolution "because the conditions for permanent dissolution of the decree set forth by the parties' October 25, 2011, Settlement Agreement have been satisfied." Defendants' Memorandum of Law in Support of its Second Motion to Dissolve the Consent Decree at 1, Commonwealth v. Kirby, No. 74-258 (E.D. Pa. August 11, 2014).

**CONCLUSIONS OF LAW**

1. Pursuant to the parties' Settlement Agreement, the parties had 14 days "to assert any challenges to the data contained in the report."[2] See supra ¶13 (quoting Settlement Agreement ¶ 2(d)).

2. The Settlement Agreement fails to permit challenges to the consent decree based on the constitutionality of the exam given to uniformed personnel.

3. Plaintiffs seek to challenge the exam results based on paragraph 2(a) of the Settlement Agreement, which states that the Department may administer exams and hire eligible applicants without regard to the consent decree, "but must otherwise comply with law." See supra ¶13 (citing to Settlement Agreement ¶ 2(a)).  This provision, however, does not permit Plaintiffs to relitigate a separate disparate impact discrimination claim in the context of the consent decree.  Such a reading would be contrary to the spirit of the Agreement, which was to suspend the decree and give the City the opportunity to devise a new examination and recruiting process, the success of which would be measured by the 26.73% benchmark for uniformed African American firefighter representation.  See supra ¶13.  The parties agreed that the only permitted challenges were set forth in paragraph 2(d) of the Settlement Agreement and were limited to the EEO-1 report.

---

[2]  The Settlement Agreement limited challenges to the data contained in the EEO-1 report to the following claims: (i) that the City made a mathematical error in calculating the percentage of African-Americans in the uniformed personnel classes; (ii) that the City included individuals who are not on the Department's payroll as of the date that the suspension period expires; or (iii) any other factor, provided that there is a presumption of correctness for data that is provided by an employee and a challenge to a classification is supported by substantial evidence.  See supra ¶13 (quoting Settlement Agreement ¶ 2(d)).

     Nothing in the agreement suggests the parties intended to allow challenges to the validity of the consent decree based on the language in paragraph 2(a) relied on by Plaintiffs.[3]

4. The City produced the EEO-1 report on May 8, 2014. Plaintiffs did not assert any challenges, or request an extension, and the EEO-1 report remains uncontested.

5. The Settlement Agreement states, "the consent decree will permanently dissolve if, after the expiration of the suspension period and final determination by the Court of any challenges described in subparagraph 2(d), the representation of African-Americans in the Department's combined uniformed personnel classes does not fall below 26.73% of the total number of employees in the combined uniformed personnel classes." See supra ¶13 (citing to Settlement Agreement ¶ 2(e)).

6. At the end of the suspension period, the percentage of African-Americans in the Fire Department had not fallen below 26.73%, and was 27.61%, which is higher than the percentage required by the Settlement Agreement.

7. Because Plaintiffs did not challenge the data in the EEO-1 report, as permitted in 2(d) of the Settlement Agreement, and the percentage of African American fire fighters exceeded the percentage set forth in paragraph 2(e) of the Settlement Agreement, the consent decree shall be permanently dissolved pursuant to that provision.[4] See supra ¶ 13 (citing to Settlement Agreement ¶¶ 2(d)(e)).

---

[3] As the City conceded at oral argument on September 24, 2014, Plaintiffs can challenge the constitutionality of the examination process through a new lawsuit.

[4] In addition, Plaintiffs' objection to the City's August 11, 2014 motion to dissolve the consent decree was untimely. When it was not filed within 14 days as required by the Court's Rules, See Local R. Civ. P. 7.1, I contacted Plaintiffs' counsel, who stated he intended to file a response by September 2, 2014. Plaintiffs failed to respond on that date. I then held a status conference and ordered Plaintiffs to file a response by September 12, 2014. See 9/4/2014 Order

8. Effective immediately, the decree shall be permanently dissolved and this litigation marked settled and discontinued with prejudice.

BY THE COURT:

*/s/ Timothy R. Rice*
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

(doc. 318). Plaintiffs did not respond on that date. Plaintiffs eventually filed their response three days later, on September 15, 2014.